Good morning. It's been awhile. Yes, it has. It's an honor to be here. I'm Jeffrey Jensen, and I represent the defendant, appellant Donald Stenson. And since this is the fourth or fifth argument of the morning, the court will be pleased to hear that I think the issue presented in this single issue appeal is breathtakingly simple. The question is whether the district court erroneously exercises discretion in denying Mr. Stenson's pre-sentencing motion to withdraw his guilty pleas. Rule 11 is also one of the more simpler laws on the books. It simply says that where a defendant moves to withdraw his guilty pleas before sentencing, and he can show that he has any fair and just reason for doing so, the court should grant the motion. May I grant the motion? Should grant the motion to allow him to withdraw the plea if he shows a fair and just reason for doing so. And the problem in this case I don't think was the fair and just reason. Mr. Stenson proffered three reasons in his motion. One is he didn't have enough time to talk to his lawyer. Two, that he was not satisfied with his lawyer's efforts in the morning of his plea hearing, he took some clonazepam, which was interfering with his ability to understand the proceedings and properly answer the questions. Nobody, I think, is suggesting that especially number three would not be a fair and just reason to allow him to withdraw the plea because it implicates the voluntariness of the plea. At the motion hearing, Mr. Stenson testified that on the morning of his plea hearing, he was feeling particularly anxious and nervous, so he took a clonazepam, which is a medication, he said, that was prescribed to him to help him sleep and to help deal with his anxiety, and that it interfered with his ability to understand what he was doing. In his words, it made him very compliant. He was just answering yes to everything, every question that the court was asking. The court denied the motion for two reasons. One is, the court cited to one of this court's decisions, United States v. Hardiman, in which the court said, in order to succeed on this type of an allegation that your medication interfered with your ability to understand, you ought to present an affidavit from a doctor, at the minimum, explaining how the medication interfered with your ability to understand the proceedings. And second of all, apparently looking at the totality of the record, the judge noted that on the plea agreement, Mr. Stenson said that at the time he signed the plea agreement, he was not under the influence of any drugs or alcohol, and there was testimony that the plea agreement was signed on the day the plea was entered. So the district court drew an inference that it was done shortly before the plea hearing took place. Now here's where I believe the court erroneously exercised its discretion. A close reading of Hardiman shows that it's distinguishable on two important facts, and not only that, there's language in there that arguably supports Stenson's claim to withdraw his plea. In Hardiman, during the plea colloquy, the judge asked him, are you on any prescription medication? Things of that nature, and Hardiman told the judge that he was, but he didn't think it was interfering with his ability to understand what was going on, so they proceeded. In this case, in Stenson's case, there was no question from the judge to Mr. Stenson as to whether he was on medication that morning, and I think that is a huge distinction between Hardiman and Stenson's case. And then second of all, in Hardiman, the nature of the medication that Hardiman was using was psychotropic medication, which is designed and intended to help clarify people's thinking, to help them overcome the symptoms of whatever mental illness they have, so that they can participate in a plea colloquy. Whereas, on the other hand here, Stenson's medication was So, I don't think Hardiman's admonition that an affidavit from a doctor is a categorical requirement for a motion to withdraw a guilty plea for this reason. Stenson testified that he took the medication, he testified that the medication was doing what it is intended and designed to do, this wasn't a side effect, and consequently he became overly compliant and said yes to all of the court's questions. The government presented no evidence to the contrary, so there was no real question of fact about that. It was just the district judge saying, I don't believe you because you didn't submit the affidavit from a doctor, and you said in the plea questionnaire that you were not under the influence of drugs or alcohol. How is the district court to know what the effects or side effects of any particular medication is? You know, we're not physicians, and generally speaking, we don't take the word of lay people on what the impacts or effects of a drug, of drugs are, and so I think your argument is the district court in the absence of any opposing evidence just should have taken, you know, Mr. Stenson's word for what the drug did to him and just go on from there. Yes. And so what if the district judge, you know, as the testimony was going on, went online, looked at the district court to say, well, I don't really think you're right because, you know, WebMD says something different, and so it's Mr. Stenson's burden to prove just and fair reason, and I think it puts the district courts in a very difficult position to understand exactly what the impacts of particular types of medication are without some, and I think that's kind of probably the Posner's kind of reasoning that, you know, it would be nice to, it would be good to have an expert talk about this. Somehow I knew that question was going to be answered, so I have, quite asked, so I have the answer, and it is, this isn't a matter of Donald Stenson offering a layman's opinion in the abstract about how clonazepam can affect a person. This is Donald Stenson telling Judge Adelman, I took this medication, and this is how it affected me. So I think that switches the burden probably to the government to say clonazepam wouldn't affect a person that way. So there is evidence in the record, and there's really nothing to the contrary. Granted, it is Mr. Stenson's layperson's testimony, but it is from firsthand experience. He's describing how this medication actually did affect him. We're not that the judge also was drawing on his observations of Mr. Stenson during the plea colloquy. Again, I'm glad you asked that question because there's language in Hardeman that specifically addresses that, and it's at page 943. The court wrote, a judge is required to investigate the incompetent to plead. And here's the important language. The fact that a defendant seems competent when answering the judge's questions at the plea hearing should not be conclusive. Mental diseases or mental impairments brought on by psychotropic drugs might alter the premises of a person's thinking rather than the articulation of his thoughts. And that's what Stenson testified to. Not conclusive, but something that the judge may consider. Yes, but not conclusive. I mean, it seems to me that the problem you're facing here is the abuse of discretion standard. Different judges might have responded to this in different ways. Right. I was afraid one of the judges would ask me, isn't this a factual finding subject to the clearly erroneous standard? And my answer to that is, I don't think so because Judge Edelman specifically relied heavily on Hardeman in his decision. That the evidence was sufficient primarily because you didn't submit an affidavit from a doctor. So I think it's a question of law, not of fact. Thank you. Thank you. Mr. Klayman. Good afternoon, your honors, and may it please the court. William Klayman for the United States. The District Court acted well within its discretion here when it found that Mr. Stenson pleaded guilty knowingly and voluntarily. It based that decision based on its own observations of Mr. Stenson at the plea hearing. Mr. Stenson's responses to the court during the plea colloquy. Mr. Stenson's and his counsel's assurances to the court in the plea agreement that he told the court he reviewed and signed the same morning as his plea hearing. I wanted to briefly address my friend on the other side's arguments regarding Hardeman, which I believe he focused on primarily. As an initial matter, I don't think it's a fair reading of Judge Edelman's decision to say that he found that the only way to provide a fair and just reason to withdraw your guilty plea on this basis is through a medical affidavit. I think the better and more complete reading of the decision is that Mr. Stenson's claim was rather the evidence Mr. Stenson put forward was meager and conclusory and contradicted by what was otherwise in the record. And it was specifically, it was lacking the kind of substantial and specific evidence that the court would look for in these sort of circumstances. And while that would most often include probably some sort of doctor who could otherwise opine on this sort of claim, that's not the only kind of specific evidence. The affidavit Mr. Stenson submitted, for example, stated in conclusory fashion that he had taken clonazepam, suffered some sort of vague side effects and was therefore unable to plead guilty voluntarily. But he did not specify when he took that medication, how much of it he took, whether anyone saw him take it. He didn't provide any proof that he actually has that team who could corroborate or contextualize his behavior from that morning, an affidavit from a friend or family member who could confirm that he was in fact taking and even abusing this sort of medication. None of that is in the record here. Those evidentiary deficiencies are entirely attributable to Mr. Stenson. And the district court acted well within its discretion when accredited its own observations of Mr. Stenson and the voluntariness of his plea over his after-the-fact and conclusory allegations to the contrary. Unless the court has any specific questions, we would rest on our briefs and ask that you affirm the judgment below. I guess I would just invite the comment that this is one of the shortest plea colloquies I've seen in the federal courts. And I frankly was a little surprised that there wasn't a question about medication in the face-to-face give and take. Is that common in the Eastern District? So, I don't practice typically in the Eastern District of Wisconsin, so I can't say for certain. I think we would all agree. Oh, you're from D.C. Okay. Yes. Certainly, it would be good practice to ask that question, but I think it's both parties recognize it's not legally deficient. It's not a Rule 11 violation to not ask that question. And I think in this case, it certainly wasn't reversible error. Okay. Thank you. Thank you. Mr. Jensen, your time has expired, but you can have some additional time for rebuttal. Right. If Judge Hamilton would like an answer to the question about the Eastern District, I could answer that if you still want me to. Sure. The judges in the Eastern District run the gamut in their plea colloquies. For example, Judge Pepper, you will be there for an hour while she goes through all this with the defendant, whereas Judge Adelman, that's a fairly common plea colloquy that you saw on the record here. And the only point of rebuttal I want to raise is that I think it is a fair reading of Judge Adelman's decision that he relied almost exclusively on Hardiman. It's in the record. I don't need to read it to you, but he cites the language from Hardiman to make a case for being permitted to withdraw a guilty plea. When the judge's inquiries at the plea hearing had been adequate, it requires an affidavit. And here, not only was there not an inquiry at the plea colloquy, there was testimony that the drug was doing what it was supposed to do, not some little known side effect. So I would ask the court to reverse Judge Adelman's order and remand the matter with instructions to grant the motion. Thank you very much. Our thanks to both counsel. The case is taken under advisement.